IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MATTHEW ALAN HEARN,

Plaintiff,

v.

CITY OF BAKERSFIELD, et al.,

Defendants.

CASE NO. 1:22-cv-00668-CDB

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

(Doc. 53)

ORDER GRANTING PLAINTIFF'S MOTION TO ALLOW FOR LATE FILED OPPOSITION

(Doc. 57)

ORDER DENYING AS MOOT EX PARTE APPLICATION TO SHORTEN NOTICE PERIOD ON PLAINTIFF'S MOTION TO ALLOW FOR LATE FILED OPPOSITION

(Doc. 58)

Pending before the Court is the motion of Defendants City of Bakersfield, Christian Walter Hernandez V, and Nathan A. Anderberg ("City Defendants") for partial summary judgment, filed on April 11, 2024. (Doc. 53), Plaintiff Matthew Alan Hearn's motion to allow for late filed opposition and an *ex parte* application for an order shortening time for notice on a motion to allow a late filed opposition. (Docs. 57-58), and the parties' oppositions thereto (Docs. 56, 60).[1] For the reasons set forth

[1] Following the parties' expression of consent to the jurisdiction of a United States Magistrate Judge for all purposes, this action was reassigned to Magistrate Judge Christopher D. Baker pursuant to

herein, City Defendants' motion for partial summary judgment shall be GRANTED IN PART, Plaintiff's motion to allow for late filed opposition shall be GRANTED, and Plaintiff's motion to shorten time shall be DENIED AS MOOT.

**Factual Background**[2]

In or around September 7, 2020, the Bakersfield Police Department ("BPD") gang unit, in conjunction with the Kern County Probation Department, was engaged in a "sit op." (Doc. 53-2, Joint Statement of Undisputed Material Facts "JSUF" at ¶ 3). The sit op "essentially [looks] for gang members that may have probation or parole status and [makes] sure they are in compliance and not in possession of any type of contraband." *Id.* As a result of these sit ops, BPD stopped numerous vehicles. *Id.*

On September 7, 2020, at approximately 7:36 p.m., Defendant Christian Walter Hernandez V ("Hernandez"), a BPD Detective, was driving a marked BPD patrol vehicle northbound on Chester, approaching Columbus. *Id.* at ¶ 1. Defendant Samantha Jauch ("Jauch"), a Kern County Probation Officer, was riding as the front seat passenger of the vehicle. *Id.* at ¶ 2. The area that Hernandez and Jauch were in was "known for the East Side Crips criminal street gang." (Doc. 53-3, City Defendants' Separate Statement of Material Facts, "DSMF" at ¶ 1; Doc. 53-8 at ¶ 2).

Hernandez and Jauch observed a black 2021 Camaro, driven by Plaintiff, traveling northbound on Chester at an excessive speed, as much as 15 miles per hour over the speed limit. (JSUF at ¶¶ 4-6). The Camaro was maneuvering around other vehicles and forcing vehicles to slam on their brakes. *Id.* at ¶ 4. Hernandez activated his lights and sirens to initiate a traffic stop in light of Plaintiff's reckless driving, speeding, and failure to signal. *Id.* at ¶ 7. Hernandez attests he believed that the Camaro might be trying to get away from a crime that the occupant had committed as the vehicle was traveling erratically at a high rate of speed. (DSMF at ¶ 1; Doc. 53-8 at ¶ 2). Hernandez was unable to run the plate of the Camaro because the vehicle had a temporary tag. (JSUF at ¶ 9).

---

28 U.S.C. § 636(c)(1). (Doc. 40).

[2] As it must on a motion for summary judgment, the Court sets forth the material facts and draws all reasonable inferences in the light most favorable to Plaintiff, the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 387 (2007).

When Plaintiff pulled over, Hernandez and Jauch both exited the patrol vehicle. *Id*. at ¶ 8. Hernandez and Jauch attest they could hear loud music coming from the Camaro. (DSMF at ¶¶ 2-3). As Hernandez approached the driver's side of the vehicle, he asked Plaintiff to turn the radio down to facilitate easier communication and for officer safety purposes. (JSUF at ¶ 10). Plaintiff did not turn his music down and instead used profanity to tell Hernandez that he could not tell him to turn his music down. *See id*. at ¶¶ 11-12 ("[Plaintiff] admits that he had music playing 'the way the f—k he wants to' and contends he did not have to turn his music down despite [Hernandez's] request to do so."). Plaintiff asserts he responded appropriately to Hernandez's communications with him. (Doc. 56-1, Plaintiff's Response to City Defendants' Statement of Undisputed Facts, "PR" at ¶ 2).

Hernandez attests he believed it would be safer for him and Jauch for Plaintiff to exit the vehicle based on Plaintiff's "immediate hostility" and the fact that the vehicle had not been searched for weapons. (DSMF at ¶ 4). Hernandez directed Plaintiff out of the vehicle. (JSUF at ¶ 13). Plaintiff responded that he did not have to get out of the vehicle. *Id*. Hernandez attests he put Plaintiff in a control hold and escorted him out of the vehicle. (DSMF at ¶ 5). Plaintiff contends Hernandez forced him out of the vehicle without giving him sufficient time to unbuckle his seat belt or exit on his own. (PR at ¶¶ 4-5).

Hernandez placed Plaintiff in handcuffs and escorted him to the backseat of the patrol vehicle. (DSMF at ¶ 6). Plaintiff alleges he was told he was under arrest when he was originally handcuffed or after being placed in the back seat of the patrol vehicle. (PR at ¶¶ 6, 9). Once Plaintiff was placed in the back of the patrol vehicle, he continued to yell obscenities and began kicking the police door. (JSUF at ¶ 14; DSMF at ¶ 7). Hernandez asserts that Plaintiff kicked the door that he was holding such that it hit him and caused pain in his elbow. (DSMF at ¶ 7). Jauch claims when she got back in the patrol vehicle, she felt Plaintiff spit on her. *Id*. at ¶ 8. Jauch left the vehicle and advised Hernandez and Defendant Sergeant Nathan A. Anderberg ("Anderberg") that Plaintiff had spit on her. (JSUF at ¶ 15).

At some point, Hernandez contends he decided to place Plaintiff under arrest for violation of Penal Code §§ 69 (resisting executive officers) and 148 (resisting public or peace officers or emergency medical technicians in discharge of their duties). (DSMF at ¶ 9). Hernandez contacted Anderberg, his direct supervisor, for approval to arrest Plaintiff and also because Plaintiff wanted to speak with a

supervisor. (JSUF at ¶ 17; DSMF at ¶ 20). Thereafter, Anderberg responded to the scene. (JSUF at ¶ 18). When Anderberg arrived, Plaintiff was still in the back seat of the patrol vehicle and Anderberg could hear Plaintiff yelling from inside the vehicle. *Id*. Anderberg sought to conduct a use of force interview. (DSMF at ¶ 20). Anderberg spoke with Hernandez regarding the nature of the stop and what had taken place. (JSUF at ¶ 20). Anderberg also "attempted to speak with [Plaintiff] but found it difficult due to [Plaintiff's] refusal to listen to what [he] had to say." *Id*. at ¶ 21. At some point, Plaintiff's vehicle was towed away from the scene. *Id*. at ¶ 16. Plaintiff alleges City Defendants unlawfully searched, seized, and impounded his vehicle. (Doc. 32 at ¶¶ 117-20, 124-29).

In light of Plaintiff's conduct, Hernandez and Anderberg determined Plaintiff should be evaluated to assess whether he was under the influence. (JSUF at ¶ 22). Hernandez requested that Officer Andrew Shive ("Shive"), a traffic officer, respond to the scene to perform a sobriety test. *Id*. at ¶ 23. When Shive arrived, he did not feel comfortable performing a field sobriety test given Plaintiff's "irrational behavior and the proximity to the road." *Id*. at ¶ 24. Shive asked Plaintiff if he would be willing to consent to a blood draw to determine if he was under the influence of a narcotic. (Doc. 53-10 at ¶ 2). Plaintiff consented to the request. *Id*.

Hernandez and Jauch transported Plaintiff to Kern Medical Center ("KMC") so that Plaintiff could be evaluated for being under the influence. (DSMF at ¶ 11). Upon Plaintiff's arrival at KMC's parking lot, Shive observed Plaintiff and felt that he was simply irate and was not under the influence. (DSMF at ¶ 12; Doc. 53-5 at 27). Hernandez and Jauch then transported Plaintiff to the Central Receiving Facility to be booked. (JSUF at ¶ 25). Plaintiff "continued to be extremely irate cursing and calling Hernandez foul names." *Id*. at ¶ 26. Plaintiff refused to allow nurses at the facility to take his vitals, "cursing incessantly," and stating, "he would not calm down until he had a blood draw or Breathalyzer test." *Id*. at ¶ 27. Thereafter, Hernandez and Jauch transported Plaintiff back to KMC to be medically cleared. *Id*. at ¶ 28.

At KMC, Plaintiff continued yelling profanities. *Id*. at ¶ 29. Hernandez escorted Plaintiff to KMC's Serenity Room so that other patients did not have to hear him yelling. *Id*. at ¶ 30. Inside the Serenity Room, "[Plaintiff's] head went toward [Hernandez] as though [Plaintiff] intended to head butt [Hernandez]." (DSMF at ¶ 13). Hernandez managed to block Plaintiff and push him away. (JSUF at ¶

31). Plaintiff fell on the ground on his stomach and Hernandez attempted to use his body weight to restrain Plaintiff. (JSUF at ¶ 31; DSMF at ¶ 31; Doc. 53-5 at 34-35). BPD Officer Alex Romo ("Romo") came into the room and assisted Jauch in attempting to control Plaintiff's legs because he was kicking. (DSMF at ¶¶ 14-15). Plaintiff alleges at some point "[a]fter a chemical test, Hernandez pushed him into a wall while moving him to another room. (Doc. 32 at ¶ 30). Later, Plaintiff was medically cleared and was transported back to the Central Receiving Center where he was taken into custody. (DSMF at ¶ 16). Plaintiff claims "[t]he arrest without probable cause, excessive force and the conduct of [Hernandez] and others caused [him] to suffer a psychotic break and/or [post-traumatic stress disorder] symptoms." (PR at ¶ 12).

Plaintiff was charged in state court with (1) reckless driving in violation of Vehicle Code § 23101(A); (2) obstructing/resisting a police officer in violation of Penal Code § 148(a)(1); (3) battery on a police officer in violation of Penal Code § 243(B); (4) battery on a peace officer in violation of Penal Code § 243(B); (5) unsafe turn and/or without signaling in violation of Vehicle Code § 22107; and (6) unsafe speed in violation of Vehicle Code § 22350. (DSMF at ¶ 17; Doc 56-1 at ¶ 17). Plaintiff was acquitted of all charges. *Id*.

**Procedural History**

On December 14, 2021, Plaintiff filed a complaint for declaratory judgment, injunctive relief, and monetary damages in the Superior Court of California, County of Kern. (Doc. 1 at 2, 5). Plaintiff raised claims against the following Defendants: (1) the City of Bakersfield; (2) Greg Terry, the Police Chief of BPD; (3) Hernandez; (4); Shive; (5) Romo; (6) T.R. Marickel, the Probation Chief of the County of Kern; and (7) Jauch. *Id*. at 6. On June 2, 2022, Defendants removed the action to this Court. *Id*.

On February 10, 2023, Plaintiff filed the operative first amended complaint for declaratory judgment, injunctive relief, and monetary damages against the aforementioned Defendants and the County of Kern. (Doc. 32).[3] Plaintiff raises the following claims: (1) battery; (2) false arrest and/or false imprisonment; (3) intentional infliction of emotional distress; (4) negligence; (5) Tom Bane Civil

[3] Plaintiff's First Amended Complaint omitted Greg Terry and T.R. Marickel as named Defendants (Doc. 32).

Rights Act violation, Cal. Civ. Code § 52.1; (6) Fourth Amendment violation—excessive force; (7) Fourth Amendment violation—municipal and supervisory liability; (8) First Amendment retaliation—traffic stop; (9) Fourth Amendment—unreasonable search and seizure; and (10) Fifth Amendment—unreasonable search and seizure. *Id.* at 7-21. On April 3, 2024, the parties stipulated to the dismissal of Defendants Shive and Romo with prejudice. (Docs. 51, 52).

On April 11, 2024, City Defendants filed the instant motion for partial summary judgment. (Doc. 53). City Defendants seek judgment as a matter of law on Plaintiff's second, sixth (as to Defendants Anderberg and the City of Bakersfield), seventh, eighth, ninth, and tenth causes of action. *Id.* In connection with their motion, City Defendants also filed the JSUF, DSMF, a notice of lodging video exhibits, and six declarations. *Id.*

On April 30, 2024, City Defendants filed a statement regarding Plaintiff's failure to timely file an opposition to their motion for partial summary judgment and requested that the Court grant their motion in its entirety in light of the lack of opposition. (Doc. 54). On May 3, 2024, the Court deemed the motion submitted and suitable for disposition without hearing and oral argument. (Doc. 55).

On May 8, 2024, Plaintiff filed a belated opposition to City Defendants' motion for partial summary judgment. (Doc. 56). Plaintiff argued his "causes of action should survive because lack of probable cause for the arrest cannot justify or excuse later actions." *Id.* at 3. Plaintiff argues his "eighth cause of action supports a claim as [his] speech [] was protected and the arrest was without probable cause." *Id.* Plaintiff concedes that his sixth cause of action as to Defendants Anderberg and the City of Bakersfield, as well as his seventh and tenth causes of action, are defective. *Id.* Plaintiff also filed a response to City Defendants' statement of undisputed material facts. (Doc. 56-1). Plaintiff did not file his own separate statement of material facts. *See* (Doc. 56).

That same day, Plaintiff filed a motion for leave to file his belated opposition to Defendants' motion for partial summary judgment and an *ex parte* application for an order shortening time for notice on a motion to allow the late filed opposition. (Docs. 57-58). Plaintiff attached a declaration from his counsel, Phillip W. Gillet, Jr., in support of his motion and application. (Docs. 57-2; 58-1). Later that day, Defendants filed an opposition to Plaintiff's motion to allow for a late filed opposition. (Doc. 60).

On May 16, 2024, the Court issued an order deeming the motion to allow for a late filed opposition suitable for disposition without hearing and oral argument. (Doc. 61).

**Plaintiff's Motion to Allow for Late Filed Opposition (Doc. 57)**

Because City Defendants' motion for partial summary judgment was filed on April 11, 2024, (Doc. 53), Plaintiff was required to file his opposition or statement of non-opposition no later than April 25, 2024. Fed. R. Civ. P. 78; Local Rule 230(c). Plaintiff's Counsel, Mr. Gillet, asserts he believed that the opposition was "due 21 days prior to the hearing on May 21, 2024." (Doc. 57-2 at ¶ 4).[4] Mr. Gillet claims he committed a clerical error and mis-calendared the due date for the opposition to May 6, 2024. *Id*. at ¶ 5. He further asserts he attempted to gain City Defendants' consent to allow for a late-filed opposition. *Id*. at ¶¶ 7-8, 14. Plaintiff argues his counsel's error amounted to excusable neglect. (Doc. 57-1). Plaintiff contends "[g]iven the fact that the court has not yet issued its ruling, the length of delay is short, the potential impact on the plaintiff's claims is significant, and that the movant acted in good faith, all the *Pioneer* factors weigh in favor of allowing the late-filed opposition." *Id*. at 2-3 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

In response, City Defendants contend Plaintiff has not offered a plausible excuse for his failure to timely file an opposition and has demonstrated a prior disregard for court rules and procedures. *Id*. at 2-4.[5] City Defendants also argue Plaintiff has failed to comply with Local Rule 233 and has failed to demonstrate good faith and, by extension, excusable neglect. *Id*. at 4-7.

Under Federal Rule of Civil Procedure 6(b), when a party fails to timely file a brief, "the court may, for good cause, extend the time" to file such brief "if the party failed to act because of excusable neglect." Fed. R. Civ, P. 6(b). "Excusable neglect 'encompasses situations in which the failure to comply with a filing deadline is attributable to negligence,'" and may include "omissions caused by

[4] Defendants' motion for partial summary judgment was originally set for hearing before this Court on May 20, 2024. (Doc. 53).

[5] The Court takes notice of the following events: (1) on January 23, 2023, the Court issued an order requiring Plaintiff to show cause why sanctions should not be imposed for failing to follow a Court order requiring Plaintiff to file a document memorializing Defendants' consent to the filing of a first amended complaint as required pursuant to Rule 15(a)(2) (Docs. 22-23); and (2) on September 15, 2023, the Court issued orders to show cause and for sanctions for Plaintiff's failure to contribute to the parties' joint status report. (Docs. 45-46).

carelessness." *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (quoting *Pioneer*, 507 U.S. at 388, 394). "The determination of whether neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Id.* (quoting *Pioneer*, 507 U.S. at 395). In determining whether the neglect was excusable, the Court considers: "(1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000) (citing *Pioneer*, 507 U.S. at 395). These factors are not an exclusive list; instead, the Court must consider all relevant circumstances. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997); *Pioneer*, 507 U.S. at 395.

Plaintiff unquestionably has demonstrated nothing short of carelessness in connection with opposing City Defendants' motion for summary judgment. Plaintiff's counsel offers no explanation as to how or why he determined his opposition was due 21 days before the motion hearing date. *See* Doc. (57-2 at ¶ 4). The applicable local and federal rules set forth the requirements when oppositions are due. Fed. R. Civ. P. 78; Local Rule 230(c). The Court advised Plaintiff's counsel at the outset of the case to familiarize himself with the Local Rules of the Eastern District of California and to abide by all applicable rules of procedure. (Doc. 42 at 7). Thus, Plaintiff's failure to adhere to the Court's rules does not demonstrate good faith.

However, the Court is bound to consider all relevant circumstances to determine whether neglect is excusable. The Court finds that Plaintiff did proffer a reasonable basis for failing to file an opposition until May 8, 2024. As Plaintiff mis-calendared his due date (Doc. 57-2 at ¶ 5), he was only notified of his error when City Defendants filed their statement regarding Plaintiff's failure to timely file an opposition (*id*. at ¶ 6). The following day, Plaintiff attempted to secure a stipulated agreement to file a late filed opposition. *Id*. at ¶¶ 7-8, 14. Although counsel for City Defendants acknowledged receipt of Plaintiff's request, City Defendants did not answer either affirmatively or negatively. *See* (Doc. 60-1). Shortly after a follow-up communication to counsel for City Defendants, Plaintiff filed his opposition on May 8, 2024. (Doc. 57).

As the opposition was filed thirteen days after it was due, the Court finds the length of delay was not substantial. *Cf. Linder v. Golden Gate Bridge, Highway & Transp. Dist.*, No. 14-cv-03861 SC, 2015

WL 1778608, at *4 (N.D. Cal. Apr. 17, 2015) (finding a delay of eight days was fairly minor). Additionally, City Defendants do not identify any material prejudice they would suffer were the Court to permit the late-filed opposition, and the Court finds they will not be prejudiced. *See* (Doc. 60).

The Court finds that on balance the *Pioneer* factors weigh in favor of finding that Plaintiff's failure to timely file an opposition to City Defendants' motion for partial summary judgment resulted from excusable neglect.

**City Defendants' Motion for Partial Summary Judgment (Doc. 53)**

A. Legal Standard

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there are "no genuine issues as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court may grant summary adjudication or partial summary when there is no genuine issue of material fact as to a particular claim or portion of a claim. *Id.*; *see also Lies v. Farell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981). The standards that apply for summary adjudication or partial summary judgment are the same as those for summary judgment. *See* Fed. R. Civ. P. 56(a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

The movant has the initial burden of demonstrating that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). A genuine issue of material fact exists if the record contains some probative evidence that a reasonable fact finder would return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). In ruling on a motion for summary judgment, the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott*, 550 U.S. at 378.

Once the moving party satisfies its burden, the burden shifts to the non-moving party to show that there are genuine factual issues that properly can be resolved only by a finder of fact. *Cal. Architectural Bldg. Prods. Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1446, 1468 (9th Cir. 1987)

(citing *Anderson*, 477 U.S. at 250). The non-moving party cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal citations omitted); Fed. R. Civ. P. 56(c)(1); *Matsushita Elec.*, 475 U.S. at 586 n.11. The non-moving party must "show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 252); *Addisu v. Fed Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute to be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In deciding a motion for summary judgment, the court may consider other materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (on summary judgment, "the court has discretion in appropriate circumstances to consider other materials, [but] it need not do so").

B. Discussion

City Defendants contend they are entitled to judgment as a matter of law on Plaintiff's second cause of action for false arrest/false imprisonment, eighth cause of action for violation of the First Amendment – retaliatory traffic stop, and ninth cause of action for violation of the Fourth Amendment – unreasonable search and seizure, as there was probable cause for the traffic stop, detainment, and arrest of Plaintiff. (Doc. 53).[6] In opposition, Plaintiff argues Defendants did not have sufficient cause to justify a stop of his vehicle, his playing of music and use of profanity are not crimes, Hernandez had no specific articulable reason to search and seize his vehicle, and he was arrested without probable cause. (Doc. 56 at 2-3). The Court will review Plaintiff's second, eighth, and ninth claims below in turn.

/ / /

/ / /

[6] As Plaintiff concedes that his sixth (as to Defendants Anderberg and the City of Bakersfield), seventh, and tenth causes of action are deficient (Doc. 56 at 3), the Court shall grant City Defendants' motion for summary judgment as to all three claims without further discussion.

1. False Arrest/False Imprisonment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. The "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure'" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *see Brendlin v. California*, 551 U.S. 249, 255 (2007) ("The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver."). Thus, an automobile stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren*, 517 U.S. at 810.

To satisfy the Fourth Amendment, an officer must have "reasonable suspicion" of criminal activity to initiate a traffic stop. *Price v. Kramer*, 200 F.3d 1237, 1248 (9th Cir. 2000); *see United States v. Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000) (finding the standard is lower than "probable cause" and analogous to the one set forth in *Terry v. Ohio*, 392 U.S. 1 (1968)). "Reasonable suspicion supported by articulable facts that criminal activity 'may be afoot' will sustain an investigative stop." *Haynie v. Cnty. of Los Angeles*, 339 F.3d 1071, 1075 (9th Cir. 2003) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Courts look to the totality of the circumstances to "see whether the officer had a 'particularized and objective basis' for suspecting criminal activity." *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002). Typically, the decision to stop an automobile is reasonable "where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. "The fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop." *United States v. Fowlkes*, 804 F.3d 954, 971 (9th Cir. 2015) (citation omitted).

Plaintiff argues "[t]he fact that [he] was legally using dealer plates or paper plates on his vehicle" was not a sufficient reason to justify a stop of his vehicle. (Doc. 56 at 3). However, the record reflects Plaintiff was not stopped for using dealer plates or paper plates, but rather, for a host of other reasons. Perhaps most importantly, it is undisputed that Hernandez observed Plaintiff engaging in reckless driving, speeding, and failing to signal. (JSUF at ¶¶ 4, 7). Plaintiff concedes he was speeding well over the posted speed limit. *See id*. at ¶ 5 ("The Camaro was speeding and driving as much as 15 miles over

the speed limit."); *see also* (Doc. 56 at 2) ("The stop was simply for speeding 10-15 miles per hour over the speed limit."). As such, Hernandez possessed at least reasonable suspicion to stop Plaintiff's vehicle for a traffic violation. *E.g.*, *United States v. Lawson*, 731 Fed. Appx. 663, 664 (9th Cir. 2018) ("Based upon his observations of Lawson's speeding and missing license plates, the arresting officer [] had valid grounds to perform the traffic stop. The district court did not clearly err in finding that Williams reasonably perceived Lawson's traffic infractions …"); *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006) ("A traffic violation alone is sufficient to establish reasonable suspicion.").

Next, Plaintiff asserts he was forced out of his vehicle and arrested without probable cause. (Doc. 56 at 2-3). Plaintiff brings this claim under California Government Code sections 815.2, and 820, not 42 U.S.C. § 1983. (Doc. 32 at 9-10). Under California law, false imprisonment is the "unlawful violation of the personal liberty of another." *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757 (1997). "False arrest is but one way of committing a false imprisonment." *Collins v. City & Cnty. of San Francisco*, 50 Cal. App. 3d 671, 673 (1975); *see Watts v. Cnty. of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001) (under California law, false arrest and false imprisonment are not separate torts; instead, a false arrest is considered a way to commit false imprisonment).

To state a claim of false arrest or false imprisonment, a plaintiff must show: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011) (quoting *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000)). Similar to a claim under § 1983, California state law bars civil liability for false arrest where an arresting officer had probable cause to effect the arrest. *See Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1213 (9th Cir. 2011) (reversing denial of summary judgment on state law false arrest claim where officer defendants had probable cause to arrest plaintiff); *see also Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 928 (N.D. Cal. 2014) ("Courts analyze state false arrest and false imprisonment claims under the same rubric as § 1983 claims based on false arrest under the Fourth Amendment.").

Probable cause is measured by an objective standard based on the information known to the arresting officer. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see Hill v. Scott*, 349 F.3d 1068, 1072 (8th Cir. 2003) ("[S]ufficient probability, not

certainty, is the touchstone of reasonableness under the Fourth Amendment...”). To determine whether an officer had probable cause for an arrest, courts “examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.” *O'Doan v. Sanford*, 991 F.3d 1027, 1039 (9th Cir. 2021) (quoting *D.C. v. Wesby*, 583 U.S. 48, 56-57 (2018) (internal citations and quotation omitted)).

The parties disagree as to the precise moment Plaintiff’s arrest took place. City Defendants assert “Hernandez decided to place [Plaintiff] under arrest for assaulting him and [Jauch] in violation of Penal Code 69 and 148.” (Doc. 53-1; DSMF at ¶ 9). Plaintiff claims he was told he was under arrest by Hernandez when originally handcuffed and first placed in the back of the patrol vehicle. (PR at ¶¶ 6, 9); *Cf. United States v. Juvenile (RRA-A)*, 229 F.3d 737, 743 (9th Cir. 2000) (“[W]e conclude that [her] handcuffing was the clearest indication that she was no longer free to leave and therefore find it to be the point of arrest.”). But viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, a reasonable jury could not find that Hernandez lacked probable cause to arrest Plaintiff when he handcuffed him.

First, Hernandez had probable cause to arrest Plaintiff based on his observation of Plaintiff’s numerous traffic violations. In *Atwater v. City of Lago Vista*, the Court held that “if an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.” 532 U.S. 318, 354 (2001). Likewise, under California law, “[a] warrantless arrest by a peace officer for a misdemeanor is lawful only if the officer has reasonable cause to believe the misdemeanor was committed in the officer’s presence.” *Johanson v. Dep't of Motor Vehicles*, 36 Cal. App. 4th 1209, 1216 (1995) (citing Cal. Penal Code § 836(a)(1)). As discussed above, Hernandez observed Plaintiff engage in reckless driving, speeding, and failure to signal. (JSUF at ¶ 7). Thus, Hernandez had reasonable cause to arrest Plaintiff for violations of California Vehicle Code § 23103 (reckless driving), § 22108 (duration of signal), and § 22350 (basic speed law).

Although a closer call and not essential to the Court’s determination that officers had probable cause to compel Hernandez to exit his vehicle and arrest him for the traffic violations, Hernandez also had probable cause to arrest Plaintiff based on Plaintiff’s violation of California Penal Code § 148. The

crime of obstructing a police officer, Cal. Penal Code § 148(a)(1), permits fines and imprisonment of a person who "willfully resists, delays, or obstructs" a police officer "in the discharge or attempt to discharge any duty of his or her office or employment." Cal. Penal Code § 148(a)(1). An arrest under § 148(a)(1) requires probable cause to believe the following: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the lawful performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties. *People v. Simons*, 42 Cal. App. 4th 1100, 1108-09 (1996); *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005).

City Defendants argue there was probable cause to arrest Plaintiff for violating § 148(a)(1) as he refused to step out of his vehicle. (Doc. 53-1 at 21). The record demonstrates Hernandez attempted to engage with Plaintiff and asked him to turn the radio down to facilitate easier communication and for officer safety purposes. (JSUF at ¶ 10). In response, Plaintiff "used profanity" and refused Hernandez's request. *Id*. at ¶¶ 11-12. "Based on [Plaintiff's] immediate hostility and the fact that the vehicle had not been searched for weapons, [Hernandez] believed it would be safer for him and for [Jauch] for [Plaintiff] to get out of the vehicle." (DSMF at ¶ 4). Hernandez then directed Plaintiff out of the vehicle, but Plaintiff responded he did not have to get out of the vehicle. (JSUF at ¶ 13). Thereafter, Plaintiff claims he was arrested after he was removed from the vehicle. (PR at ¶¶ 6, 9).

Ninth Circuit case law is clear that "[e]ven [] crass and inarticulate, verbal challenges to the police are protected" and alone cannot support an arrest under § 148. *Mackinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir. 1995) (citing *Duran v. Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990)); *see Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1174 (9th Cir. 2013) ("[E]ven though the police may dislike being the object of abusive language, section 148 does not allow them to use the awesome power which they possess to punish individuals for conduct that is not only lawful, but which is protected by the First Amendment.") (internal quotation marks omitted). It is also clear that § 148 does not criminalize a person's failure to respond with alacrity to police orders. *People v. Quiroga*, 16 Cal. App. 4th 961, 966 (1993). By contrast, § 148 does criminalize *complete failure* to comply with police orders. *See Davis v. Cnty. of San Bernardino*, No. EDCV 08-1262 SVW (SSx), 2009 WL 3838287, at *6 (C.D. Cal. Nov. 13, 2009), *aff'd*, 442 Fed. Appx. 300 (9th Cir. 2011) (emphasis added).

Plaintiff claims Hernandez forced him out of the vehicle without giving him sufficient time to unbuckle his seat belt or exit on his own. (PR at ¶¶4-5; Doc. 56 at 3). A mere delay coupled with eventual compliance of the order cannot amount to a violation of § 148. *See Mackinney*, 69 F.3d at 1006 (no violation of section 148 when plaintiff refused to comply for a few seconds); *Kantz v. Brantingham*, No. 3:16-cv-00352-LRH-VPC, 2017 WL 3079844, at *4 (D. Nev. July 19, 2017) (no violation of statute "materially identical" to Cal. Pen. Code § 148 even when plaintiff took approximately 30 seconds to go to the bumper of her car); *In re Chase C.*, 243 Cal. App. 4th 107, 118 (2015) (finding no violation of § 148 where a minor argued with officers and did not initially, but eventually, complied with police); *cf. Davis*, 2009 WL 3838287, at *6 ("[W]hile mere *delay* is not criminalized under § 148, outright refusal to comply with police orders falls within the scope of the statute if it impedes the officer in the conduct of his duties.").

The question is whether Plaintiff's conduct, under all of the facts and circumstances known to Hernandez, would prompt a prudent person to believe it was fairly probable that Plaintiff was attempting to wilfully delay or obstruct officers in their performance of duties – to wit, to complete investigation of Plaintiff's traffic offenses while providing for their own safety. *See United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986) (defining probable cause as "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime."). *See also Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) ("Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations.").

Here, the undisputed material facts establish that Plaintiff did not "merely delay" and eventually comply with Hernandez's order. To the contrary, Plaintiff admits he refused officers' initial requests that he lower the volume of his music to facilitate their investigatory efforts and swore at officers. (JSUF at ¶¶ 11, 12). Plaintiff also concedes he thereafter refused Hernandez's directions to get out of the vehicle. *Id*. at ¶ 13. Plaintiff does not challenge the propriety of the officers' justification to demand he exit his vehicle – that Plaintiff was hostile at the outset of the traffic stop and it was unknown whether his vehicle harbored weapons – instead, he argues he was not given sufficient time to exit on his own

accord before being removed from the vehicle. (DSMF at ¶ 4).[7] But where Plaintiff twice affirmatively refused officers' directions to facilitate their investigation, presented hostility throughout and never signaled any intent of eventually complying with officers' orders they issued in the discharge of their employment, he cannot now seek relief in arguing that he just needed more time. *See Sorgen v. City and Cnty. of San Francisco*, No. C 05-03172 TEH, 2006 WL 2583683, at *5 (N.D. Cal. Sep. 7, 2006) (granting summary judgment where the plaintiff "explicitly expressed at all times that had no intention of complying because he believed that he had a right to be where he was. Accordingly, the 'slow to comply' doctrine does not apply to this case.").

Accordingly, summary judgment is warranted in favor of City Defendants on Plaintiff's false arrest/false imprisonment claim because Hernandez had probable cause to effect the arrest.

2. First Amendment Retaliation

The First Amendment forbids government officials from retaliating against individuals for speaking out. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). To state a claim for First Amendment retaliation against a government official, the plaintiff must demonstrate that "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016).

A plaintiff raising a First Amendment retaliation claim "must generally 'plead and prove the absence of probable cause,' because the presence of probable cause generally 'speaks to the objective reasonableness of an arrest' and suggests that the 'officer's animus' is not what caused the arrest." *Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir, 2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 400-01 (2019)). If the plaintiff establishes the absence of probable cause, he also must show that the retaliation

[7] For the assertion he did not have enough time to exit his vehicle, Plaintiff cites video footage of the traffic stop, lodged with the Court and provided by City Defendants to Plaintiff via email as Exhibits A-C. (Doc. 53-4, Ex. A). However, the videos do not present a disputed issue of fact as to whether Hernandez gave Plaintiff sufficient time to voluntarily exit his vehicle. Following the initial exchange between Hernandez and Plaintiff, instead of unbuckling his seatbelt and exiting, Plaintiff looked back toward Hernandez, removed his glasses, pointed them aggressively outside the vehicle window toward Hernandez and accused him of "driving with an attitude."

was a substantial or motivating factor behind the arrest, and, if that showing is made, the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation. *Id.* at 63 (citing *Nieves*, at 587 U.S. at 403-04).[8]

Because the Court finds that there was probable cause to arrest Plaintiff based on Hernandez's observation of Plaintiff's numerous traffic violations and violation of Cal. Penal Code § 148(a)(1) (*supra* 13-16), Plaintiff cannot show based on the undisputed facts that his speech was the "but for" cause of his arrest, and therefore, his First Amendment claim cannot succeed as a matter of law. Accordingly, City Defendants are entitled to summary judgment on Plaintiff's First Amendment claim.

3. Fourth Amendment Unreasonable Search and Seizure

Plaintiff also raises a Fourth Amendment claim for unreasonable search and seizure. (Doc. 32 at 19-20). Specifically, Plaintiff alleges City Defendants unlawfully searched him and searched, seized and impounded his vehicle without a warrant, valid consent, or exigent circumstances. *Id.* at ¶¶ 117-19. City Defendants assert Plaintiff's unreasonable search and seizure claim should fail as a matter of law because there was probable cause to arrest Plaintiff. *See* (Doc. 53-1 at 18-22). In opposition, Plaintiff asserts Hernandez had no "specific articulable reason to need to search the vehicle." (Doc. 56 at 2).

While Plaintiff claims City Defendants unlawfully searched his person, the factual record is devoid of any such search taking place. *See generally* (JSUF; DSMF; PR). Even if City Defendants had searched Plaintiff's person, as Plaintiff alleges, such search would be constitutionally permissible. When a lawful arrest is made, it is reasonable for the arresting officers to search "the arrestee's person and the area within his immediate control." *Davis v. United States*, 565 U.S. 229, 232 (2011) (citation and internal quotations omitted); *see United States v. Smith*, 389 F.3d 944, 950-51 (9th Cir. 2004) ("The search incident-to-arrest exception permits law enforcement officers to conduct a warrantless search of a person who is arrested, and of his surrounding area, when the search is incident to the arrest."). Thus,

[8] Although a finding of probable cause generally defeats a retaliation claim, a "narrow" exception applies where "officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406. This exception applies only "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. Here, Plaintiff has not raised this argument or presented any such evidence to demonstrate the narrow exception applies.

because there was probable cause to arrest Plaintiff, a search of Plaintiff's person would not have violated the Fourth Amendment.

Separately, Plaintiff alleges City Defendants searched and impounded his vehicle in violation of the Fourth Amendment. (Docs. 32 at ¶¶ 117-19; 53-5 at 86). Warrantless vehicle searches are presumptively unreasonable unless the search falls within an exception to the warrant requirement. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001); *accord Sandoval v. County of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018) (citing *Brewster v. Beck*, 859 F.3d 1194, 1196 (2017)). Likewise, "[t]he impoundment of a vehicle is a seizure within the meaning of the Fourth Amendment" and the burden is on the government to demonstrate that a warrantless seizure falls under one of the "few specifically established exceptions to the warrant requirement." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (internal quotation marks omitted).

City Defendants fail to identify any exception to the Fourth Amendment's warrant requirement that applies to the search and seizure (impoundment) of Plaintiff's vehicle. Instead, City Defendants summarily argue that "there was probable cause to arrest [Plaintiff] and as such… [Plaintiff's] …ninth cause[] of action must be adjudicated." (Doc. 53-1 at 22). But mere probable cause to arrest the driver of a vehicle does not authorize law enforcement to conduct a search of the vehicle unless, as articulated above, an exception to the warrant requirement applies.

Hernandez searched the passenger compartment and trunk of Plaintiff's vehicle shortly after he handcuffed Plaintiff and secured him in the back of Hernandez's patrol vehicle. *See* (Doc. 53-4, Ex. A); *see also* (JSUF at ¶ 16) ("[Plaintiff] continued to yell while he was inside the patrol vehicle pending the towing of his vehicle."). Thus, because Plaintiff already was secured in a patrol vehicle before Hernandez searched Plaintiff's vehicle, the search-incident-to-arrest exception to the warrant requirement does not apply. *See United States v. Ruckes*, 586 F.3d 713, 718 (9th Cir. 2009) ("Officers are only permitted to search the passenger compartment of an arrestee's automobile if the search is required for officer safety or is necessary to prevent destruction of evidence of the crime for which the recent occupant was arrested") (citing *Arizona v. Gant*, 556 U.S. 332, 341-42 (2009)).

Nor does the automobile exception to the warrant requirement apply because City Defendants failed to present any argument or evidence that there was probable cause to believe that Plaintiff's vehicle contained evidence of a crime. *See United States v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012).

City Defendants similarly fail to address Plaintiff's Fourth Amendment claim as it relates to the seizure and impoundment of his vehicle. One exception to the warrant requirement that might apply under the circumstances presented in this case is law enforcement's authority to seize property when acting in their role as a "community caretaker." *Miranda*, 429 F.3d at 863. "In their 'community caretaking' function, police officers may impound vehicles that 'jeopardize public safety and the efficient movement of vehicular traffic.'" *Id*. at 864 (citing *South Dakota v. Opperman*, 428 U.S. 364, 371, n. 5 (1976)); *see Hallstrom v. Garden City*, 991 F.2d 1473, 1477, n.4 (9th Cir. 1993) (upholding the towing of a car from a public parking lot following the driver's arrest pursuant to the community caretaking exception). This exception "does not categorically permit government officials to impound private property simply because state law does." *Sandoval*, 912 F.3d at 516. Instead, whether an impoundment is warranted under the community caretaking doctrine depends on the location of the vehicle and the police officer's duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft. *United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008).

In *Miranda*, the Ninth Circuit observed that the police's authority to search and seize property when acting in its role as "community caretaker" has a different source than its authority to search and seize property to investigate criminal activity. 429 F.3d at 863. The reasonableness of a seizure under the "caretaker" function "differs from the bright-line rule concerning probable cause in the criminal context." *Id.* Thus, "[a] driver's arrest, or citation for a non-criminal traffic violation as in this case, is not relevant except insofar as it affects the driver's ability to remove the vehicle from a location at which it jeopardizes the public safety or is at risk of loss." *Id*.

The Court declines to manufacture an argument not raised by City Defendants and scour the record to determine whether sufficient undisputed facts exist to conclude as a matter of law that the warrantless seizure and impoundment of Plaintiff's vehicle was permissible under the community caretaking exception. Accordingly, City Defendants are not entitled to summary judgment on Plaintiff's Fourth Amendment unreasonable search and seizure claim.

**Conclusion**

For the reasons set forth above, IT IS HEREBY ORDERED:

1. Plaintiff's motion to allow a late filed opposition to City Defendants' motion for partial summary (Doc. 57) is GRANTED;
2. Plaintiff's *ex parte* application for an order shortening time for notice on a motion to allow a late filed opposition to City Defendants' motion for partial summary judgment (Doc. 58) is DENIED AS MOOT;
3. City Defendants' motion for partial summary judgment (Doc. 53) is GRANTED IN PART to the following extent:
   i. The motion is GRANTED to the extent of dismissing counts two, seven, eight, and ten with prejudice, and count six with prejudice as to Defendants Anderberg and the City of Bakersfield;
   ii. The motion is DENIED as to count nine (Fourth Amendment – search and seizure of vehicle).
4. A pretrial scheduling order shall enter forthwith.

IT IS SO ORDERED.

Dated: **June 13, 2024**

UNITED STATES MAGISTRATE JUDGE