1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

EASTERN DISTRICT OF CALIFORNIA

8
9

MATTHEW ALAN HEARN,

Case No.  1:22-cv-00668-CDB

10

Plaintiff,

ORDER ON MOTIONS IN LIMINE

11

v.

(Docs. 70-71)

12

CITY OF BAKERSFIELD, *et al.*,

ORDER ON PLAINTIFF'S MOTION TO
EXTEND TIME TO FILE OPPOSITION

13

Defendants.

(Doc. 76)

14
15
16

**<u>Introduction</u>**

17

Plaintiff Matthew Alan Hearn ("Plaintiff") asserts causes of action pursuant to 42 U.S.C. §

18

1983 and state law against Defendants City of Bakersfield, Christian Walter Hernandez V, Nathan A.

19

Anderberg (collectively "City Defendants"), and S. Jauch, and County of Kern (collectively "County

20

Defendants"), based on Defendants' alleged actions in connection with a law enforcement encounter

21

between Plaintiff and Defendants and others on September 27, 2020, in Bakersfield, as alleged in the

22

operative First Amended Complaint.  (Doc. 32).  Plaintiff asserts causes of action for: (1) Battery; (2)

23

Intentional Infliction of Emotional Distress; (3) Negligence; (4) California Civil Code § 52.1 ("Bane

24

Act") – Civil Rights Violations – Excessive Force; (5) 42 U.S.C § 1983 – Excessive Force; and (6) 42

25

U.S.C § 1983 – Unreasonable Search and Seizure.  (Doc. 32; Doc. 62 at 20).

26

Trial of the action is scheduled to commence on November 12, 2024.  (Doc. 65).  Pending

27

before the Court are motions *in limine* by Plaintiff and City Defendants, filed September 6, 2024.

28

(Docs. 70-71).  City Defendants, later joined by County Defendants, filed their opposition to

Plaintiff's motions on September 20, 2024.  (Docs. 74, 75).  That same day, Plaintiff filed a motion for a three-day extension of time to file his opposition to City Defendants' motions *in limine*.  (Doc. 76). Plaintiff filed his untimely opposition to Defendants' motions on September 23, 2024.  (Doc. 77). City Defendants, later joined by County Defendants, filed their reply to Plaintiff's opposition on September 25, 2024.  (Docs. 78, 79).

**Discussion**

### A.  Legal Standard

Parties may file motions *in limine* before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered."  *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Rulings *in limine* are not binding on the court, and the court may amend, renew, or reconsider such rulings in response to developments at trial.  *Id*. at 41–42.

To decide motions *in limine*, the Court considers whether evidence "has any tendency to make a fact more or less probable than it would be without the evidence," and whether "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence is generally admissible.  Fed. R. Evid. 402.  However, the Court may exclude relevant evidence for various reasons, including if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  In other words, relevant evidence may be excluded when there is a significant danger that the jury might base its decision on emotion or when non-party events would distract reasonable jurors from the real issues in a case.  *See Tennison v. Circus Circus Enters., Inc*., 244 F.3d 684, 690 (9th Cir. 2001); *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985).

The rulings on the motions *in limine* made below do not preclude any party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible.  *See City of Pomona v. SQM N. Am. Corp*., 866 F.3d 1060, 1070 (9th Cir. 2017) (noting that the court's motion in limine ruling is a preliminary opinion).  In this event, the proponent of the evidence shall raise the issue outside the presence of the jury.

**B.  Plaintiff's Motion for Three-Day Extension to File Opposition**

On the deadline for any party to file an opposition to another's motion *in limine* (September 20, 2024, *see* Doc. 73), Plaintiff filed a motion for a three-day extension of time to file his opposition. (Doc. 76).  In the declaration attached to the motion (Doc. 76-1), Plaintiff's counsel attests that he was in a jury trial in state court at the time of the pretrial conference on September 12, 2024.  Counsel further states that he anticipated the completion of trial very soon after but was "sent out" on another jury trial earlier than anticipated, on September 18, 2024.  Counsel attests he anticipated being able to file the opposition in a timely fashion but it took him longer to complete than he anticipated and, due to the late hour, it was not reasonable to obtain opposing counsel's stipulation to extend the time to file.  Finally, counsel represents that he would be willing to stipulate to an extension of time for Defendants to file any reply.  (Doc. 76-1 at 1-2).

In the Eastern District of California, "[r]equests for Court-approved extensions brought on the required filing date for the pleading or other document are looked upon with disfavor."  Local Rule 144(d).  Requests for extensions in the time to make a required filing must be made "as soon as the need for the extension becomes apparent."  *Id.*

Plaintiff's motion was filed on the deadline to file his opposition to Defendants' motions *in limine*.  The Court finds Plaintiff's explanation for his delay in filing an opposition unpersuasive as counsel should have known, when staffed on another jury trial on September 18, 2024, that he may have been unable to meet the filing deadline.  Additionally, the Court notes it has admonished counsel for Plaintiff numerous times regarding his failure to timely comply with Court orders and to timely make filings – including by failing to timely file an opposition to Defendants' motion for summary judgment.  *See* (Docs. 23, 45, 46, 62).

As Plaintiff's motion to belatedly file an opposition is unopposed and Defendants have timely filed a reply to the belated opposition (Docs. 78, 79), the Court will grant Plaintiff's motion for a three-day extension of time (Doc. 76) and consider Plaintiff's opposition (Doc. 77).

///

///

1   **C.  Plaintiff's Motions *in Limine***

2           ***Motion A: To Exclude Reference to Plaintiff's Appearance on the TV Show "Hell's***

3   ***Kitchen"***

4           Plaintiff seeks to exclude any reference, evidence, testimony or argument regarding Plaintiff

5   appearing in the television show "Hell's Kitchen."  Plaintiff states that he played a character on the

6   show and gave testimony that his actions were part of the show and not real.  Plaintiff contends that

7   this evidence is more prejudicial than probative, citing Federal Rules of Evidence 401, 403 and 404,

8   stating that evidence of a person's character is not admissible to prove that a person acted within the

9   character or trait.  (Doc. 71 at 3).

10          Defendants contend that Plaintiff improperly fails to provide any meaningful understanding of

11  what he is seeking to exclude and why the exclusion is appropriate.  Defendant cites case law for the

12  proposition that motions *in limine* seeking to exclude broad or unspecific categories of evidence are

13  disfavored.  (Doc. 74 at 2).

14          ***Ruling*:** "The movant has the burden of establishing that the evidence [sought to be

15  excluded] is not admissible <u>for any purpose</u>."  *United States v. Wager*, 651 F. Supp. 3d 594, 598

16  (N.D.N.Y. 2023) (emphasis added) (citation omitted). Among other things, the movant "must identify

17  the evidence at issue and state with specificity why such evidence is inadmissible."  *United States v.*

18  *Lewis*, 493 F. Supp.3d 858, 861 (C.D. Cal. 2020).  "Motions in limine that seek exclusion of broad and

19  unspecific categories of evidence" are disfavored (*Jackson v. Cnty. of San Bernardino*, 194 F. Supp.3d

20  1004, 1008 (C.D. Cal. 2016)), and a party's "failure to specify the evidence that a motion in limine

21  seek[s] to exclude constitutes a sufficient basis upon which to deny th[e] motion."  *Lewis*, 493 F.

22  Supp.3d at 861 (internal quotation marks and citation omitted).  "Essentially, non-specific, vague, and

23  boilerplate motions in limine are prohibited."  *Angelo w. Thomson Int'l, Inc.*, No. 1:21-cv-01609-JLT-

24  CDB, 2024 WL 3202513, at *1 (E.D. Cal. June 27, 2024) (citing cases).

25          Based on Plaintiff's three-sentence description of what he purports to seek to exclude, the

26  Court cannot discern what specific evidence and/or testimony is at issue and why such evidence

27  purportedly is irrelevant and unduly prejudicial.  Because Plaintiff has not carried his burden of

28  demonstrating that any evidence is inadmissible for all purposes, this motion *in limine* will be denied.

*Motion B: To Exclude Prior Criminal Convictions, Charges, or Conduct*

Plaintiff seeks to exclude any reference, evidence, testimony or argument regarding prior criminal convictions, charges, or conduct.  Plaintiff contends that the evidence is not relevant, that it is more prejudicial than probative, and that evidence of a person's character is not admissible to prove that person acted within the character or trait.  Plaintiff cites Federal Rules of Evidence 401, 403, 404, and 609.  (Doc. 71 at 3).

Defendants contend that Plaintiff's motion improperly fails to provide what evidence he is seeking to exclude with any specificity.  Defendants also argue that the evidence is relevant in regard to the cross-examination of Plaintiff's expert Daniel Rubiaco, who is proffered to testify to Plaintiff's psychological state during the incident.  Defendants contend that, if Dr. Rubiaco is permitted to testify, then they should be permitted to cross-examine him regarding his knowledge of the Plaintiff's criminal history and how the Plaintiff behaved during those earlier situations.[1]  Defendants also argue that prior criminal convictions, charges, or conduct are relevant as to Plaintiff's claimed damages and the issue of causation, particularly as Plaintiff has pled an intentional infliction of emotional distress cause of action.  Defendants cite case law for the proposition that "other acts" are relevant if offered for material issues other than character, such as proximate cause and alternative explanations for claimed emotional distress, even if those acts tend to establish bad character.  Defendants contend such evidence can be given with a limiting instruction as to its use.  (Doc. 74 at 3-6).

***Ruling***:  Pursuant to Fed. R. Evid. 609(a)(1)(A), evidence that a witness has been convicted of a crime that was punishable by imprisonment in excess of one year shall be admitted for the purpose of attacking a witness's character for truthfulness, subject to Rule 403.  Separately, convictions involving elements or admitted acts of dishonesty or false statements may also be used to attack a witness's credibility without regard to the crime's penalty. Fed. R. Evid. 609(a)(2).  Under Rule 609(b), prior convictions older than ten years are admissible for impeachment purposes if their probative value substantially outweighs any prejudicial effect and reasonable written notice of intent to use is given. Fed. R. Evid. 609(b).

---

[1] As set forth below, the Court will grant Defendants' motion *in limine* to preclude Dr. Rubiaco from testifying.

"The Ninth Circuit has outlined five factors for courts to consider when balancing the probative value of evidence against the prejudicial effect under Rule 609: '(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of [the party's] testimony; and (5) the centrality of [the party's] credibility.'"  *Stevenson v. Holland*, 504 F. Supp.3d 1107, 1133 (E.D. Cal. 2020) (quoting *United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000)).  "With regard to the ten-year limit under Rule 609(b), the Ninth Circuit has cited favorably to the committee notes from the adoption of the rule, which state in part that '[i]t is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances.'"  *Id*. (quoting *Simpson v. Thomas*, 528 F.3d 685, 690 (9th Cir. 2008)) (quoting Fed. R. Evid. 609 advisory committee notes).

Once again, Plaintiff fails to carry his burden of identifying the specific criminal convictions, arrests, and underlying alleged (or established) criminal conduct he seeks to preclude.  Without these details, the Court is ill-equipped to determine under the applicable rules and authorities whether any of Plaintiff's convictions or underlying conduct may be admissible.  Further, without such details, the Court cannot determine whether this evidence separately may be admissible under Rule 404 for purposes other than impeachment – to wit (as Defendants argue), for the evidence's relevance to causation and damages.

The Court will reserve ruling on this motion *in limine* and direct counsel for Defendants prior to seeking to admit any such evidence of Plaintiff's criminal history, to address the issues with the Court outside the presence of the jury.

### *Motion C: To Allow Questioning of Defendant Hernandez Concerning Prior Inconsistent Testimony*

Plaintiff seeks an order from the Court allowing him to question Defendant Hernandez about his prior testimony in the criminal case that resulted from Plaintiff's conduct at issue in this case, which prior testimony Plaintiff contends differs from Defendant Hernandez's body-worn camera footage.  Separately, Plaintiff seeks to admit evidence of Defendant Hernandez's testimony in an apparently unrelated criminal case (*People v. Jimmy Brown*, Case No. BF197799A).  Plaintiff asserts Defendant Hernandez testified in that case that he stopped the defendant because he had no light

illuminating his vehicle's license plate.  Plaintiff states the police report reflects Defendant Hernandez in fact stopped Brown because his license plate light was too dim, a fact purportedly corroborated by body-worn camera footage.  (Doc. 71 at 3-4).

Defendants argue Plaintiff never disclosed transcripts of testimony or the cited body-worn camera related to the *Brown* case and that such nondisclosure violates Rule 26.  (Doc. 74 at 6).  Additionally, Defendants argue that Federal Rule of Evidence 608 specifically precludes the introduction of extrinsic evidence to prove specific instances of a witness's conduct, in order to attack a witness's character for truthfulness.  Defendants cite to *Ball v. Cnty. of Los Angeles* (2015 U.S. Dist. LEXIS 39610 (C.D. Cal Mar. 23, 2015)), where the defendants were not permitted to call plaintiff's former neighbors to testify that plaintiff had falsely accused them of crimes, under Federal Rules of Evidence 404 and 608.  (Doc. 74 at 6-7).

Defendants argue this evidence should be excluded under Federal Rule of Evidence 401 and 403.  Defendants contend that the evidence has no relevance as the only issues at trial will be whether the search and impoundment of Plaintiff's vehicle was lawful and whether Plaintiff's handcuffs were too tight, and the evidence does not tend to prove or disprove those issues.  Finally, Defendants argue the evidence would waste time and confuse the issues, and, thus, should be precluded under Rule 403.  (Doc. 74 at 7-8).

*Ruling*:  Although Rule 608(b) "prohibits the cross-examiner from introducing extrinsic evidence of the witness' past conduct," it "allows a cross-examiner to impeach a witness by asking him about specific instances of past conduct, other than crimes covered by Rule 609, which are probative of his veracity or 'character for truthfulness or untruthfulness.'"  *United States v. Abel*, 469 U.S. 45, 55 (1984); *see United States v. Chu*, 5 F.3d 1244, 1249 (9th Cir. 1993) (Rule 608(b) "excludes extrinsic evidence of a specific instance of conduct of a witness offered to attack the witness' credibility.").  Nevertheless, the district court retains discretion to admit extrinsic evidence to rebut or impeach the direct testimony of a witness.  *See* Fed. R. Evid. 607; *Chu*, 5 F.3d at 1249 (citing *Trust Servs. of Am. v. United States*, 885 F.2d 561, 569 (9th Cir. 1989)).  *See, e.g.*, *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999) ("Castillo's expansive and unequivocal denial of involvement with drugs on direct examination warranted the district court's decision to admit extrinsic

evidence of the 1997 cocaine arrest as impeachment by contradiction."); *United States v. Running Cane*, 692 Fed. Appx. 828, 829 (9th Cir. 2017) (upholding district court's admission of extrinsic evidence that defendant's knuckles were abrased and swollen as tending to contradict his direct testimony that he did not punch victim).  Admission of such extrinsic evidence is subject to a balancing under Rule 403.  *Castillo*, 181 F.3d at 1133. *E.g.*, *K.J.P. v. Cnty. of San Diego*, 621, F. Supp.3d 1097, 1149-51 (S.D. Cal. 2022) (finding Rule 403 did not bar § 1983 plaintiffs from examining sheriff's deputy about incidents when he did not report his on-duty use of force in compliance with agency policy only after he "opened the door" by portraying himself as a deputy who followed such policy).

Separately, Rule 613 permits impeachment of a witness' credibility through introduction of prior inconsistent statements.  *E.g., United States v. Monroe*, 943 F.2d 1007, 1012 (9th Cir. 1991). Subject to Rule 403, a district court may admit extrinsic evidence of the prior inconsistent statement provided the witness is given an opportunity to explain the inconsistency or justice otherwise requires admission of the extrinsic evidence.  Fed. R. Evid. 613(b).

The Court will deny Plaintiff's request to introduce evidence that Defendant Hernandez testified in an unrelated criminal proceeding in a manner that purportedly is inconsistent with body-worn camera and Defendant Hernandez's related written report.  The proffered inconsistency – whether a suspect's vehicle was stopped because the license plate frame light either was off or only dim – pertains to a wholly collateral matter and is only marginally relevant to Defendant Hernandez's credibility.  In contrast, the risk that introduction of the evidence of a completely unrelated incident confuses and misleads the jury and wastes its time is high and would substantially outweigh the evidence's limited probative value.  *See* Fed. R. Evid. 403.

Defendants fail to address Plaintiff's separate request to admit evidence of Defendant Hernandez's testimony in the criminal case that resulted from Plaintiff's conduct at issue in this case, which Plaintiff contends differs from Defendant Hernandez's body-worn camera footage.  The Court anticipates that body-worn camera footage of Defendant Hernandez's statements and actions during his encounter with Plaintiff is relevant and admissible.  To the extent Defendant Hernandez testified in the underlying criminal case in a manner that is inconsistent with this statements and actions at the

scene, the statements and extrinsic evidence thereof likely would be admissible under Rules 613(b), 801(d) and 403.  However, as the Court does not have sufficient information concerning the purported inconsistencies, the Court will reserve ruling on this part of the motion *in limine* and direct counsel for Plaintiff prior to seeking to admit any such evidence to address the issues with the Court outside the presence of the jury.

**D.  Defendants' Motion *in Limine***

*No. 1: To Exclude Dismissal of Criminal Case and Findings or Comments of Presiding Judge*

Defendants seek to exclude any and all evidence, references to evidence, testimony or argument relating to the dismissal of Plaintiff's underlying criminal case, as well as any findings or comments by the presiding judge in that case.  Defendants contend that the doctrine of collateral estoppel does not apply to bar the re-litigation of the issues judged in the criminal case, namely the result of acquittal on all six counts, the unlawfulness of the arrest, and the handcuffs being too tight, as mentioned by Plaintiff in the operative complaint.  (Doc 70 at 10); *see* (Doc. 32 at 6).  Defendants attach Plaintiff's responses to Defendants' first set of interrogatories, in which Plaintiff also references the aforementioned issues.  *See* (Doc. 70, Declaration of Heather S. Cohen ("Cohen Decl."), Exhibit 1 at 22-53).

Defendants cites *People v. Dawkins* (195 Cal. App. 3d Supp. 1 (1987)) for the proposition that motivational interest distinguishes parties, such that they are then not in privity for purposes of collateral estoppel.  Defendants cite additional cases from other circuits for the rule that a police officer has a personal interest in the outcome of a civil case, whereas the officer does not have an interest in the outcome of a criminal prosecution.   Defendants contend that Hernandez and Anderberg were not prosecutors and had neither a penological nor prosecutorial interest in the criminal case; they participated due to their jobs as police officers.  Defendants argue that, as such, the Defendants' interest in this civil matter is a personal and pecuniary one distinct from the penological and prosecutorial interest of the Kern County District Attorney's Office in the criminal matter and, therefore, the application of collateral estoppel should fail.  (Doc. 70 at 11-12).

Plaintiff does not directly address Defendants' arguments, but rather, asserts that a certified

9

copy of the judgment of dismissal in the criminal case is relevant to the credibility of Defendant Hernandez.  (Doc. 77 at 2).

In their reply, Defendants state they are uncertain whether Plaintiff now plans to limit the reference to the criminal case to only the testimony of the Defendants and a certified copy of the judgment, or whether Plaintiff merely failed to address the arguments raised in Defendants' moving brief.  As to the former, Defendants contend the evidence is subject to exclusion under Federal Rules of Evidence 401 and 403, and that the issues in this case are limited to the search and seizure of Plaintiff's vehicle and the use of force during the arrest.  Defendants argue that transcripts of testimony in the criminal matter are inadmissible for impeachment under Federal Rules of Evidence 608 and 403, and such evidence would cause unnecessary delay.  Defendants contend Plaintiff should not be permitted to mention or introduce evidence from the criminal case.  (Doc. 78 at 2).

*Ruling*:  Plaintiff may not seek to admit the judgment of dismissal in the criminal case as purported evidence that (1) Plaintiff's arrest was unlawful, or (2) Defendants placed handcuffs on Plaintiff too tightly.  That is because a court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'"  *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (quoting *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004), cert. denied 546 U.S. 814 (2005)).  Likewise, the state court's "commentary concerning the truthfulness of [Defendant Hernandez's] testimony and its inconsistency of the testimony to the body-worn camera" (Doc. 77) is hearsay and otherwise inadmissible because any such evidence would impermissibly intrude the jury's function in determining issues of credibility exclusively.  *Cf. Andrews v. Cnty. of Orange*, No. 8:20-cv-00925-JWH-ADSx, 2021 WL 6496831, at *2 (C.D. Cal. July 21, 2021) (testimony "on a witness's credibility, under the moniker of 'expert' would usurp the province of the jury, is of little probative value, presents a danger of misleading the jury, and must be excluded"); *McMahon v. Valenzuela*, No. 2:14-cv-02085-CAS(AGRx), 2015 WL 7573620, at *12 (C.D. Cal. Nov. 25, 2015) ("plaintiff's witnesses may not testify as to their opinions regarding the credibility of either the parties in the instant lawsuit or other witnesses who may testify").

Although Defendants defend their entitlement to relitigate matters purportedly decided in the criminal case on the grounds that Plaintiff cannot establish that the doctrine of collateral estoppel

applies, Plaintiff does not argue or suggest that collateral estoppel applies.  *Cf. Hunt v. City and Cnty.*

*of San Francisco*, 29 F.3d 632 (9th Cir. 1994) (defendant-police officers in § 1983 case not

collaterally estopped from litigating legality of plaintiff's arrest notwithstanding state court's judgment

in criminal proceedings that plaintiff's arrest was unlawful because police officers were not parties or

in privity with parties to the earlier proceeding) (unpub.).

While Plaintiff may be correct that certified copies of Defendant Hernandez's testimony in the

earlier criminal proceeding may be relevant for some purpose, including impeachment (Doc. 77 at 2),

that is not the subject of Defendants' motion *in limine*.  Accordingly, the Court will grant this motion

*in limine*.

### No. 2: To Preclude Plaintiff from Testifying as to What the Law Is or What His Understanding of the Law Is

Defendants seek an order precluding Plaintiff from testifying as to what the law is or what his

understanding of the law is.  Defendants state that, during the course of his deposition, Plaintiff

repeatedly testified that he has studied law and that he will voice his opinion and defend himself if

someone is violating what he believes are his rights.  Defendants argue that, as such, Plaintiff states his

conduct was a response to his perception that his rights were being violated.  Defendants contend that

it would be misleading and confusing to the jury to hear Plaintiff testify that his actions were in

response to his rights being violated, especially as the Court has determined as a matter of law that

Plaintiff was not the victim of false arrest or false imprisonment (with Defendants presumably

referring to Doc. 62).  Defendants argue that Plaintiff was wrong and that would further compound the

jury's confusion, and as such Plaintiff should not be permitted to testify as to what the law is, or that

his conduct was in response to his rights being violated.  *See* (Doc. 70 at 13 & Cohen Decl., Exhibit 2

at 54-69).

Plaintiff states he does not plan to give his opinions of the law unless it has a separate

legitimate purpose.  Plaintiff contends that the Court controls the modes of evidence under Federal

Rule of Evidence 611 and "should not use motions *in limine* to blanketly make evidence inadmissible"

without hearing it in context.  Plaintiff cites Federal Rule of Evidence 104(e) for the rule that a party's

right to introduce evidence that is relevant to the credibility or weight of other evidence should not be

limited.  (Doc. 77 at 2).

In their reply, Defendants contend their motion was not overbroad nor vague and that Plaintiff should not be able to testify as to what he believes the law was and why that justifies his conduct. (Doc. 78 at 3).

**Ruling**:  Plaintiff may not offer opinions as to what the law is.  *See, e.g., Gray v. Clark*, 654 F. Supp.3d 1062, 1071 (E.D. Cal. 2023) ("Lay witnesses may not give opinions that embrace the legal test for excessive force, including whether it was excessive, unreasonable, or greater than necessary.") (citing cases).  It follows that Plaintiff may not testify, among other things, that his arrest was unlawful and that Defendants were violating his civil rights – those are improper legal opinions and embrace factual and legal questions squarely within the exclusive province of the jury.  Given Plaintiff's apparent agreement to avoid eliciting lay opinions regarding the law unless for an "other legitimate purpose" (Doc. 77 at 2), the Court will grant this motion *in limine*.

The Court's ruling on this motion *in limine* would not preclude Plaintiff from offering lay explanations for his alleged conduct during his encounter with Defendants to the extent such testimony does not constitute an opinion embracing any legal test – for instance, that he acted or spoke in a particular manner during the encounter because he believed responding officers were acting improperly, unprofessionally, or over-aggressively.

### No. 3: To Preclude Plaintiff From Seeking to Recover Economic Damages

Defendants request to preclude Plaintiff from seeking to recover economic damages due to his failure to disclose relevant damages information and computations in discovery pursuant to Federal Rule of Civil Procedure 26(a)(1)(iii).  Defendants reproduce a response from Plaintiff to Defendants' interrogatory number twelve, which Defendants contend was never amended nor supplemented.  (Doc. 77, Cohen Decl., Exhibit 1 at 46-47).  Defendants state that Plaintiff did estimate his lost income to be approximately $28,000, and that he claimed the criminal charges prevented his hiring by certain employers, but Defendants contend that, as the Court concluded as a matter of law that the arrest was lawful, the Plaintiff cannot recover damages derived from his arrest.  Finally, Defendants claim Plaintiff produced a Dropbox link in response to Defendants' request for all documents evidencing economic damages, and this link did not include any such documents.  (Doc. 70 at 14-15, 21).

Plaintiff states that Defendants never made any demand for disclosure under Federal Rule of Civil Procedure 26(a)(1)(ii) or filed a motion to compel for purported nondisclosure and that Plaintiff cooperated in discovery and allowed his deposition to be taken, during which he testified about his $28,000 in lost income.  Plaintiff contends Defendants do not show they suffered prejudice as a result of the lack of disclosure under Rule 26(a)(1)(ii).  (Doc. 77 at 2).

In their reply, Defendants cite Federal Rule of Civil Procedure 26(a) for the rule that a party must provide to other parties their witness lists, document descriptions or copies, and computations of damages, without awaiting a discovery request.  Defendants contend that Plaintiff's claims in the instant case arise from the search and impoundment of his vehicle and the use of force during his arrest, and his damages are related to those discrete issues and not the criminal charges.  Defendants argue that, as such, the $28,000 lost income claim should not be recoverable since it is related to the criminal charges.  (Doc. 78 at 3).

*Ruling*:  Because this Court dismissed Plaintiff's false arrest/false imprisonment claim, Plaintiff may not seek to recover damages exclusively caused by his arrest.  Thus, for instance, to the extent Plaintiff claims entitlement to $28,000 of lost income because putative employers did not hire him solely because they were aware Plaintiff had been arrested and was pending criminal prosecution, those damages are not available here because Defendants' conduct in allegedly using excessive force or unlawfully searching Plaintiff's vehicle (the § 1983 claims that survived summary judgment) are not an "actual cause" of that injury (lost income).  *See Bearchild v. Cobban*, 947 F.3d 1130, 1150 (9th Cir. 2020) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury.") (quotation and citation omitted); *see also Chaudhry v. Aragon*, 68 F.4th 1161, 1169 & n.11 (9th Cir. 2023) ("A defendant's conduct is an actual cause, or cause-in-fact, of a plaintiff's injury only if the injury would not have occurred but for that conduct.") (internal quotations and citation omitted).

Although not identified in his opposition brief, the Court cannot rule out that Plaintiff may articulate a basis for entitlement to other types of economic damages caused by Defendants' conduct relevant to Plaintiff's surviving claims.  Thus, while Plaintiff may not introduce documentary evidence in support of claims or arguments for economic damages unless such documentary evidence was

1    produced during discovery, Plaintiff will not be precluded from testifying as to his other, alleged

2    economic damages.  If he does so, Defendants properly may cross-examine Plaintiff as to the reasons

3    why he does not have documentary evidence to substantiate his claims to economic damages.

4         Accordingly, the Court will grant in part and reserve its ruling in part on this motion *in limine*.

5         ***No. 4: To Preclude the Testimony of Plaintiff's Designated Expert Daniel S. Rubiaco***

6         Defendants seek an order precluding Plaintiff's noticed expert witness, Dr. Daniel S. Rubiaco,

7    from testifying.  Plaintiff retained Dr. Rubiaco to conduct a psychological assessment and behavior

8    analysis of him.  (Doc. 70, Cohen Decl., Exhibit 3 ["*Rubiaco Report*"]).  Defendants contend that Dr.

9    Rubiaco's proffered testimony will not help the jury understand the evidence or determine a fact in

10   issue.  Defendants point out that Dr. Rubiaco did not examine or interview the Plaintiff nor read his

11   deposition, and that his testimony is related to Plaintiff's behaviors and actions "mak[ing] logical and

12   reasonable sense."  (Doc. 70 at 15-16).  Defendants cite Federal Rule of Evidence 702 and case law

13   regarding the burden of proving admissibility, a district court's role as "gatekeeper" for expert

14   testimony, and the standards as to "good grounds" for expert opinions.  Defendants argue that the jury

15   will be asked to determine whether Defendants conducted an unlawful search and seizure of Plaintiff's

16   vehicle and whether they used unreasonable force in the arrest, and that these issues do not require the

17   opinion of a psychologist like Dr. Rubiaco.  *Id.* at 16-18.

18        Plaintiff states that he largely agrees with the case authority cited by Defendants but disagrees

19   with the conclusions, and as to what Dr. Rubiaco will testify.  Plaintiff contends that Dr. Rubiaco will

20   help the jury understand why Plaintiff behaved the way he did during the arrest and subsequent

21   detention, as the behavior was "out of the normal," and that Defendants can cross-examine Dr.

22   Rubiaco on this issue.  (Doc. 77 at 3).

23        In their reply, Defendants state Plaintiff's opposition does not demonstrate how Dr. Rubiaco's

24   review of his alleged personality is relevant for the jury's consideration of the claims at issue.

25   Defendants cite case law and Federal Rules of Evidence 401, 402, 403, and 404 regarding relevance,

26   weighing of the equities, and character trait evidence inadmissibility and exceptions.  Finally,

27   Defendants contend that Dr. Rubiaco's opinions are neither relevant nor admissible, with no

28   exceptions applying.  (Doc. 78 at 4).

14

**Ruling**: Federal Rule of Evidence ("Rule") 702 governs the admissibility of expert testimony.  Under Rule 702, a proposed expert witness must first qualify as an expert by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  The proposed expert witness may then testify in the form of an opinion if: "(a) the expert's ... specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id*.

The trial court serves a special "gatekeeping" function with respect to Rule 702.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  The trial court must make an initial assessment of the proposed expert testimony to ensure that it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 597 (1993) ("*Daubert I*").  "In other words, the trial court must consider (1) whether the reasoning or methodology underlying the expert testimony is valid (the reliability prong); and (2) whether the reasoning or methodology can be applied to the facts in issue (the relevancy prong)." *Sullivan v. Costco Wholesale Corp*., No. 1:17-cr-00959-LJO-EPG, 2018 WL 4057447, at *2 (E.D. Cal. Aug. 23, 2018) (citing *Daubert I*, 509 U.S. at 592-93).

"To determine the reliability of expert testimony, the Supreme Court has identified four factors that a trial court may consider: (1) whether the scientific knowledge ... can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance." *Id.* (internal quotations and citations omitted).  These factors, however, are not exclusive and district courts have discretion in to assess the reliability of proposed expert testimony. *Id*. (citing *Kumho Tire*, 526 U.S. at 141-42, 150).  As to relevancy, the Supreme Court has explained that expert testimony is relevant if it assists the trier of fact in understanding evidence or determining a fact in issue in the case. *Daubert I*, 509 U.S. at 591.

The proponent of the expert testimony carries the burden of proving its admissibility. *See Lust v. Merrell Dow Pharms., Inc*., 89 F.3d 594, 598 (9th Cir. 1996).  "In the context of expert scientific testimony, the Ninth Circuit has explained that the proponent meets this burden by offering 'some objective, independent validation of the expert's methodology' establishing that the expert's findings are based on 'sound science.'" *Sullivan*, 2018 WL 4057447, at *2 (quoting *Daubert v. Merrell Dow*

1   *Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995)) ("*Daubert II*").

2          Here, although Defendants appear to seek to exclude Dr. Rubiaco from testifying solely on the

3   relevancy prong – in other words, they advance no argument that Dr. Rubiaco's proposed testimony

4   fails the reliability prong – the Court in its gatekeeping role must independently determine whether

5   Plaintiff meets his burden under both prongs.

6          Dr. Rubiaco notes in his report that he could not perform a clinical diagnosis of Plaintiff

7   because he did not directly interview or assess Plaintiff.  *Rubiaco Report* at 2.  Further, Dr. Rubiaco

8   indicated that he did not review the deposition of Plaintiff prior to completing his report because he

9   had not received a transcript, but that the report would be amended after receiving and reviewing the

10  transcript – suggesting to the undersigned that Dr. Rubiaco considered it important or at least material

11  to review the transcript of Plaintiff's deposition.  *Id.* at 1.  Instead, Dr. Rubiaco's opinions are based

12  on his limited review of discovery materials (chiefly, law enforcement reports and body-worn camera

13  footage, medical records and two of Plaintiff's recorded telephone calls), all of which document

14  Plaintiff's conduct and communications during a short timeframe during and immediately following

15  the September 27, 2020 incident.  Based exclusively on his review of discovery and application of "the

16  Generic Cognitive Model," Dr. Rubiaco purports to assess Plaintiff's cognitive structures and core

17  beliefs that inform how a person processes everyday stimulus situations.  *See Rubiaco Report* at 8-10.

18  Dr. Rubiaco's opinions include, for instance:

19          Plaintiff "is pro-law enforcement and allows for a more reasonable engagement with law
20          enforcement as evidenced by his initial engagements with the Bakersfield Police
            Department during the Bakersfield Police Department Phone Calls."

21          "When Mr. Hearn experiences an activating event (i.e., when he believes he is being
22          falsely arrested, when he believes he is experiencing injustice, when he is not being
            heard, when he experiences physical pain) his automatic system is activated and
23          information is rapidly organized into gross categories (e.g., I'm not safe) thereby
            activating a maladaptive schema."

24          When Plaintiff "experiences an activating event … logical and rational information is not
25          accurately processed and does not negate the negative schema.  This is evidenced by Mr.
            Hearn's denial of any officer's explanation of the law and their explanation of the
26          arresting procedures."

27          "Once the affective process is experienced, feelings will manifest into behaviors. Based
            on Mr. Hearn's cognitive process and his feelings of being upset, irritated, pissed off, and
28          anxious, Mr. Hearn behaved in a defensive manner."

1

2

Dr. Rubiaco's ultimate conclusion is stated as such: "Based on the analysis of the discovery and the application of the cognitive model specific to Mr. Hearn's statements, thoughts, affect (feelings), and behavior, there is sufficient medical evidence to suggest Mr. Hearn's behaviors and actions make logical and reasonable sense."

3

4      Based on the foregoing, the Court finds that Dr. Rubiaco's proposed testimony fails both the

5  reliability and relevancy prongs under *Daubert I*. *See Daubert I*, 509 U.S. at 592-93.  First, Plaintiff

6  fails to carry his burden of demonstrating that the Generic Cognitive Model reliably can be applied

7  where, as here, the evaluator: (1) does not interview or directly assess the subject or interview the

8  subject's family and close friends (who seemingly would be best situated to opine about Plaintiff's

9  cognitive history and ability); (2) does not engage in any forensic testing or formal diagnoses based on

10  an accepted platform (*i.e.*, DSM-V); and (3) relies exclusively on an extremely narrow selection of

11  discovery materials documenting the subject's behavior over an approximately one-week period.  For

12  instance, Dr. Rubiaco's opinion that Plaintiff's "baseline [*i.e.*, when not experiencing physical or

13  psychological stress] scheme is pro-law enforcement" appears to be based singularly on two

14  comments Plaintiff made during his encounter with Defendants and in two recorded telephone calls he

15  made to unidentified persons while detained.  *Rubiaco Report* at 5, 7, 9.  Making such a broad

16  generalization based on an extraordinarily limited amount of facts – particularly where no clinical

17  interview or forensic testing is accomplished – does not reflect a level of reliability trial courts must

18  demand prior to permitting expert testimony under Rule 702.  *E.g., Ilyia v. Khoury*, 671 Fed. Appx.

19  510, 511 (9ths Cir. 2016) ("While the expert may have been qualified to diagnose Ilyia's psychiatric

20  status, there is no evidence that psychiatrists routinely form reliable opinions based on such a limited

21  review of a patient's mental history."); *Wood v. Southwest Airlines Co.*, No. 2:14-cv-01421-KJM-

22  CKD, 2016 WL 696599, at *4-5 (E.D. Cal. Feb. 22, 2016) (finding expert neuropsychologist's

23  methodology flawed and premised on a "bald assurance of validity" where the expert did not review

24  records of the plaintiff's preexisting conditions) (quoting *Daubert II*, 43 F.3d at 1316).

25      Dr. Rubiaco's proposed testimony separately violates the relevancy prong under *Daubert I*.

26  *See Daubert I*, 509 U.S. at 592-93.  Dr. Rubiaco's principal opinion is that "Mr. Hearn's behaviors and

27  actions [during his encounter with Defendants] make logical and reasonable sense" (*Rubiaco Report* at

28  10).  In his belated opposition, Plaintiff argues Dr. Rubiaco's testimony "will help the jurors

understand" why Plaintiff acted the way he did.  (Doc. 77 at 4).  But even assuming that the reasons why Plaintiff acted the way he did during the encounter with Defendants has some marginal, probative relevance to any fact of consequence, Plaintiff makes no argument as to how or why Dr. Rubiaco's review and characterization of Plaintiff's actions, words, and behavior as depicted in body-worn camera footage and in recorded telephone calls would assist the jury in deciding the merits of his claims.  *See Daubert I*, 509 U.S. at 591 ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'") (quoting Fed. R. Evid. 702); *see also Alves v. Riverside Cnty.*, No. EDCV 19-2083 JGB (SHKx), 2023 WL 2983583, at *7 (C.D. Cal. Mar. 13, 2023) ("To the extent his testimony is offered to add a (pseudo)scientific gloss to the notion that the Deputies' conduct was reasonable, [the expert] is unqualified to offer that opinion. To the extent he simply points out what every layperson can see from a video, his testimony is unhelpful to the jury.").  There simply is nothing unusual about the thrust of Dr. Rubiaco's proposed testimony – in short, that a person expressing stress (what Dr. Rubiaco calls an "activating event") responds less than calmly (what Dr. Rubiaco calls "activating a maladaptive schema") – that an expert must explain to a jury.

Additionally, for the reasons set forth above, were Dr. Rubiaco's testimony admitted, it would serve only to distract jurors from considering what they will be charged through jury instructions to consider and focus instead on the purported scientific explanation for why Plaintiff behaved as he did. Thus, in addition to being unreliable and unhelpful to the jury, the testimony would present a serious risk of confusing the jury.  *See* Fed. R. Evid. 403.

Accordingly, the Court will grant this motion *in limine*.

### No. 5: To Preclude Evidence or Argument that the Plaintiff's Arrest Was Unlawful

Defendants seek to exclude any and all evidence, references to evidence, testimony or argument relating to the claim that Plaintiff was falsely arrested or falsely imprisoned.  Defendants contend that these issues were adjudicated by the Court in granting Defendants' motion for partial summary judgment. (Doc. 70 at 14, citing Doc. 62 at 11:1-16:10).  Defendants argue that, as such, Plaintiff should be precluded from basing any other claim, such as Plaintiff's intentional infliction of

emotional distress claim or his California Civil Code § 52.1 claim, on his being the victim of false arrest or false imprisonment.  (Doc. 70 at 18).

In opposition, Plaintiff argues that excessive force "makes an arrest illegal."  (Doc. 77 at 3) (citing *People v. White,* 101 Cal.App. 161 [*sic*] (1980)).  Plaintiff contends that there should be no limitations on argument that because excessive force was used by Defendants, the arrest was then unlawful.  *Id.*

In their reply, Defendants contend that Plaintiff has no viable claim for false arrest or false imprisonment under the Fourth Amendment or state law.  Defendants argue that Plaintiff should therefore not be permitted to refer to the arrest of Mr. Hearn as unlawful, as it would be confusing to the jury, and cite Federal Rule of Evidence 403 for preclusion of evidence that the arrest was unlawful. (Doc. 78 at 4-5).

**Ruling**:  Consistent with the Court's ruling on Defendant's motion *in limine* No. 2 (precluding Plaintiff from offering opinions as to what the law is), Plaintiff may not offer an opinion that his arrest by Defendants lacked probable cause or otherwise was unlawful.  Instead, he may seek to explain that his actions were the result of his belief that Defendants were acting improperly, unprofessionally, or over-aggressively.  This Court already has determined that Defendants had probable cause to effect their arrest of Plaintiff.  *See* (Doc. 62 at 13-16).  In the event Plaintiff testifies in any manner akin to expressing a belief that Defendants were acting unlawfully or without authorization, the Court will instruct the jury that it has found as a matter of law that Defendants lawfully arrested Plaintiff.

Plaintiff's citation to *White* does not alter the Court's analysis above.  In that case, a defendant prosecuted for obstruction of a police officer (Cal. Pen. Code sec. 148) claimed self-defense, and on appeal, the appellate court merely determined that a jury should be fully instructed as to the legal effects of a self-defense claim. 101 Cal. App.3d at 167.  Here, Plaintiff cites no authority holding or suggesting that the legal standard for negating the "lawful arrest" element of a § 148 criminal charge has any relevance to a § 1983 plaintiff's burden of showing that an officer used excessive force in violation of the U.S. Constitution.

### *No. 6: To Preclude Plaintiff from Testifying as to Any Diagnosis or Prognosis*
### *Regarding His Medical Conditions*

Defendants seek to exclude Plaintiff, and any other lay witness, from testifying as to any diagnosis or prognosis regarding Plaintiff's injuries or medical conditions.  Defendants cite Federal Rule of Evidence 701 and case law for the rule that lay witnesses may not testify as to the cause, effect, diagnosis, or prognosis of their injuries, because such opinions require testimony from medical experts.  Defendants contend that Plaintiff should not be permitted to testify as to what other, non-designated medical experts have told him, as that would constitute inadmissible hearsay.  (Doc. 70 at 18-19).

Plaintiff cites Federal Rule of Evidence 701 and case law to contend that Plaintiff may testify about things that are based upon his perceptions, and that lay witnesses may offer opinion testimony if it is rationally based on their perception, helpful in determining an issue, and not based on specialized knowledge.  Plaintiff states that medical patients have been allowed to testify as to their mental health and prison inmates as to whether they were developing an infection, due to that being within the ordinary experience of an average person.  (Doc. 77 at 4).

In their reply, Defendants cite case law for the proposition that Plaintiff may not testify to hearsay statements from treating physicians regarding his diagnosis if such testimony is offered for the truth of the matter asserted, namely that Plaintiff has certain diagnosed conditions.  (Doc. 78 at 5).

***Ruling***:  "Regarding medical testimony, the Ninth Circuit has stated that explaining medical diagnoses is beyond the competence of lay witnesses."  *Stevenson*, 504 F. Supp.3d at 1121 (citing *Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014)).  Thus, a plaintiff may not testify to hearsay statements from his treating physicians regarding his diagnoses if such testimony is offered for the truth of the matter asserted; namely, that Plaintiff, in fact, has certain diagnosed conditions.  *See Henderson v Peterson*, No. C 07–2838 SBA (PR), 2011 WL 2838169, at *10 (N.D. Cal. July 15, 2011).  *See also Gilmore v. Lockard*, No. 1:12-cv-00925-SAB (PC), 2017 WL 11604670, at *1 (E.D. Cal. Feb. 17, 2017) ("Plaintiff may not personally testify regarding a diagnosis, opinions, inferences or causation, and may not offer any opinions or inferences from any medical records"); *Exmundo v. Scribner*, No. No. 1:06cv00205 AWI DLB PC, 2014 WL 4249133, at *1 (E.D. Cal. Aug. 27, 2014)

("As to Plaintiff's medical conditions, he may not testify as to any medical matter which requires scientific, technical, or other specialized knowledge, which generally includes any ultimate diagnosis [and] a cause and effect relationship").

With these principles in mind, while Plaintiff may not testify that he has been diagnosed with any condition that would require introduction of a diagnosing medical provider's hearsay statement, he may testify to experiencing symptoms possibly related to any diagnosed or undiagnosed disorder (such as lack of focus, impulsivity, etc.). *Stevenson*, 504 F. Supp.3d at 1121 ("But lay witnesses can testify as to perceived symptoms (i.e., what is felt, exhibited, or experienced over time) and how a condition affects one's ability to function.").

Accordingly, the Court will grant this motion *in limine*.

### No. 7: To Preclude Plaintiff from Claiming He Suffered Injuries to His Kidneys, a Concussion, Depression, or Post-Traumatic Stress Disorder as a Result of the Incident

Defendants seek to exclude Plaintiff from attempting to suggest he suffered injuries to his kidneys, a concussion, depression, or post-traumatic stress disorder as a result of the incident. Defendants state that Plaintiff only identified Dr. Rubiaco in his expert witness disclosure and did not designate any retained or non-retained medical providers who could speak to the issue of causation. Defendants cite *United States v. Urena*, where the Ninth Circuit affirmed the exclusion of causation testimony by the defendant's treating physician where the defendant had failed to designate that physician as an expert before trial. Defendants argue that the instant case is no different. Though Defendants failed to provide the proper long-form citation, the Court, using the page citations, presumes they intended to cite to *United States v. Urena*, 659 F.3d 903 (9th Cir. 2011). (Doc. 70 at 19-20).

Plaintiff contends that these topics relate to his own perceptions, are helpful in determining a fact at issue, and are within the common knowledge of the average person. Plaintiff cites case law for the claim that medical patients have been allowed to testify as to their mental health, due to such testimony meeting the requirements for admission of lay opinions. (Doc. 77 at 4).

21

1    In their reply, Defendants state Plaintiff cannot testify as to any medical diagnosis that he

2    claims to have suffered.  Defendants do not dispute Plaintiff can testify to symptoms he experienced

3    but contend he should not be permitted to testify as to any specific injury to his kidney, having a

4    concussion, a depression diagnosis, or a post-traumatic stress disorder diagnosis.  Defendants argue

5    that would constitute improperly disclosed expert opinions and hearsay from a Plaintiff lacking the

6    requisite qualifications.  (Doc. 78 at 5-6).

7    **Ruling**:  While Plaintiff is correct that he may testify that he experienced pain, or

8    suffered other symptoms, or felt depressed, that is not the subject of Defendants' motion.  Similar to

9    their motion *in limine* No. 6, Defendants seek to preclude Plaintiff from testifying to medical

10   conditions – whether diagnosed by medical professionals or undiagnosed – because such testimony

11   would require Plaintiff either to introduce inadmissible hearsay (*e.g.*, the statements of the diagnosing

12   medical providers) or inadmissible lay opinion.  Without offering a proper foundation, Plaintiff may

13   not testify that he suffered a kidney injury, a concussion, or post-traumatic stress disorder.  *See. e.g.,*

14   *Stevenson*, 504 F. Supp.3d at 1121.

15   ## Conclusion and Order

16   Based on the foregoing, it is therefore **ORDERED** that:

17   (1)    Plaintiff's unopposed motion for extension of time to file his opposition (Doc. 76) is

18   **GRANTED**;

19   (2)    Plaintiff's Motion *in Limine* A (Doc. 71) is **DENIED**;

20   (3)    Plaintiff's Motion *in Limine* B (Doc. 71) is **RESERVED**;

21   (4)    Plaintiff's Motion *in Limine* C (Doc. 71) is **DENIED IN PART** and **RESERVED IN**

22   **PART**;

23   (5)    Defendants' Motion *in Limine* No. 1 (Doc. 70) is **GRANTED**;

24   (6)    Defendants' Motion *in Limine* No. 2 (Doc. 70) is **GRANTED**;

25   (7)    Defendants' Motion *in Limine* No. 3 (Doc. 70) is **GRANTED IN PART** and

26   **RESERVED IN PART**;

27   (8)    Defendants' Motion *in Limine* No. 4 (Doc. 70) is **GRANTED**;

28   (9)    Defendants' Motion *in Limine* No. 5 (Doc. 70) is **GRANTED**;

(10)    Defendants' Motion *in Limine* No. 6 (Doc. 70) is **GRANTED**; and

(11)    Defendants' Motion *in Limine* No. 7 (Doc. 70) is **GRANTED**.

IT IS SO ORDERED.

Dated:    **October 24, 2024**

_____
UNITED STATES MAGISTRATE JUDGE